# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 08-CV-01455 (JFB) (WDW)
_____

MARIE W. DANIEL,

Plaintiff,

VERSUS

LONG ISLAND HOUSING PARTNERSHIP, INC., OF HAUPPAUGE, PETER J. ELKOWITZ, JR. IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, DIANA WEIR IN HER OFFICIAL AND INDIVIDUAL CAPACITIES, AND JAMES BRITZ IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES,

Defendants.

_____

**MEMORANDUM AND ORDER**
March 13, 2009
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff *pro se* Marie W. Daniel ("Daniel" or "plaintiff") brings this employment discrimination action alleging discrimination and retaliation on the basis of race, national origin, and color under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the United States Constitution pursuant to 42 U.S.C. §§ 1981, 1985, and 1986 ("Sections 1981, 1985, and 1986"), and New York State law, against defendants Long Island Housing Partnership, Inc. ("LIHP"), Peter J. Elkowitz, Jr. ("Elkowitz"), Diana Weir ("Weir"), and James Britz ("Britz") ("individual defendants") (collectively, "defendants").

Defendants now move to dismiss the first (Title VII), third (breach of contract), fourth (defamation), and sixth (Sections 1985 and 1986) causes of action contained in the complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] For the reasons set forth herein, defendants' motion is granted under Rule 12(b)(6).

_____

[1]  Thus, the second cause of action (which is a claim under Section 1981) and the fifth cause of action (which is a claim under Section 296 of the New York State Executive Laws) are not the subject of the defendants' motion.

## I. BACKGROUND

### A. Facts

The following facts are taken from the complaint ("Compl.") and are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

Plaintiff, a resident of the County of Nassau, State of New York, is an African American woman of Caribbean background and a former employee of LIHP. (Compl. ¶¶ 1, 5.) LIHP is a non-profit housing development agency located in the County of Suffolk, State of New York and duly organized under the laws of New York State. (Compl. ¶ 6.) It is an organization employing over 25 persons. (Compl. ¶ 6.) Elkowitz, a Caucasion man, is the president of LIHP. (Compl. ¶ 7.) Weir, a Hispanic woman, is the vice-president of LIHP, and Britz, a Caucasian man, is the director of development at LIHP. (Compl. ¶¶ 8-9.)

On January 3, 2005, plaintiff, a proposal writer and housing development professional for ten years, was employed as a Project Assistant/Grants Writer in the Department of Development for affordable housing development programs sponsored by LIHP. (Compl. ¶¶ 10, 11.) Her job required her to write narratives in order to obtain grant funds. (Compl. ¶ 12.) Plaintiff successfully completed approximately fifteen grants without difficulty or incidents, procuring approximately $8,000,000 in grant awards. (Compl. ¶ 13.) Plaintiff alleges that throughout her tenure, she worked successfully on these grants without the instructions or assistance of defendants. (Compl. ¶¶ 14, 18, 20, 24).

Plaintiff's direct supervisor was Britz, who assigned specific tasks to plaintiff. (Compl. ¶ 15.) Once plaintiff completed drafts of the narratives, either Elkowitz, Weir, and/or Britz reviewed them and made minor edits. (Compl. ¶ 16.) Plaintiff claims that her "style and quality of writing narratives were new to [the individual defendants] and it was very successful." (Compl. ¶ 16.) She further alleges that without her performance, LIHP would not have been awarded the funding that they were granted as a result of her narratives. (Compl. ¶ 16.) As evidence of her high performance, plaintiff claims that LIHP's annual reports reveal that LIHP received $0 in grant revenues in 2003, $1,566,277 in 2004, and in 2005, the year plaintiff became employed by LIHP, $5,856,965. (Compl. ¶¶ 21, 22.)

Plaintiff alleges that her performance surprised the defendants, who "did not want it to be known that a Caribbean background African-American female was writing the grants they were submitting and that they were being awarded." (Compl. ¶ 25.) Thus, they allegedly credited Caucasian men, including Britz, with plaintiff's work. (Compl. ¶ 25.) In particular, defendants allegedly used plaintiff's work as templates to teach and train less-experienced Caucasian men, who were "the ones defendants wanted to do plaintiff's job, whether or not they have the skill, training or ability," and also gave them credit for plaintiff's work. (Compl. ¶ 26.)

According to the complaint, in 2005, the defendants gave public commendations, raises, and year-end bonuses to Caucasian men, including Britz, who did not perform as well as plaintiff, but denied plaintiff raises and year-end bonuses. (Compl. ¶ 27.) Furthermore, it is alleged that defendants

falsely stated that plaintiff's work was poor in 2005 and 2006. (Compl. ¶ 28.) Defendants' public commendations and failure to acknowledge plaintiff's performance took place in monthly staff meetings and private, oral performance reviews in 2005 and 2006. (Compl. ¶ 29.) Plaintiff alleges that the individual defendants gave plaintiff negative oral performance reviews, during which they verbally criticized, attacked, and harassed plaintiff, without any documented evidence of her poor work performance. (Compl. ¶ 35.) The individual defendants allegedly spoke in loud and harsh tones during these reviews and threatened plaintiff with termination. (Compl. ¶ 38, 41, 43.)

Plaintiff further alleges that these abusive reviews occurred at least three times, on December 19, 2005, April 17, 2006, and April 11, 2006. (Compl. ¶ 40.) According to the complaint, during her April 11, 2006 review, Britz told plaintiff, "I don't feel things are working out with you here and President Elkowitz will speak to you about your performance." (Compl. ¶ 42.) During her April 17, 2006 review, plaintiff said to defendants, "your actions towards me are discriminatory." (Compl. ¶ 44.) In response, Elkowitz told plaintiff, "you need to look elsewhere for work if you don't improve." (Compl. ¶ 44.)

Plaintiff also alleges that she worked overtime on February 12, 2005 from 11:00 a.m. to 6:30 p.m., and February 13, 2005 from 3:30 p.m. to 7:30 p.m., at the request of Elkowitz, and was not paid overtime wages. (Compl. ¶ 32.) According to the complaint, when plaintiff asked Elkowitz for overtime compensation, "Elkowitz answered roughly with intonations in his voice and strong facial expression 'you will not be paid at all for working overtime,'" which plaintiff alleges

constituted different treatment than that afforded her non-Caribbean, African-American coworkers. (Compl. ¶ 32.)

It is also alleged that, on April 17, 2006, plaintiff was required to stay one hour past her scheduled work hours for a "verbally abusive discriminatory oral performance review," and was again not paid overtime. (Compl. ¶ 33.) Plaintiff alleges that her Caucasian coworkers were, however, compensated for overtime. (Compl. ¶ 33, 45.)

Plaintiff claims that as a result of defendants' actions, she became frightened to go to work and was made to feel inferior to Caucasians and those of other ethnicities. (Compl. ¶ 46.) Plaintiff also alleges that these acts were done with the knowledge and consent of LIHP, as well as the individual defendants, and was accepted and supported as policy, practice, and custom. (Compl. ¶3.)

On June 1, 2006, plaintiff submitted an internal discrimination complaint addressed to Elkowitz, detailing the course of events up to that time. (Compl. ¶ 48.) She alleges that her "efforts were rebuffed" and that defendants conspired to deprive her of employment in retaliation. (Compl. ¶ 48.) Although Elkowitz acknowledged receipt of plaintiff's internal discrimination complaint on June 1, 2006, Elkowitz never contacted her to request to meet or speak about her complaint. (Compl. ¶¶ 51, 52.) On that day, June 1, 2006, plaintiff left work ill at approximately 1:00 p.m. (Compl. ¶ 50.)

On June 2, 2006, plaintiff submitted to LIHP a note from Mercy Medical Center Emergency Department for medical absence from work. (Compl. ¶ 53.) On June 6, 2006, plaintiff's primary care physician wrote a medical excuse note stating, "the above

patient is under my care. She cannot work until further notice." (Compl. ¶ 54.) Plaintiff forwarded this note to defendants. Because plaintiff's primary care physician directed plaintiff to several other physicians to be examined and tested, she followed her primary care physician's instructions and was examined by other physicians until July 17, 2006. (Compl. ¶ 54.)

In response to plaintiff's June 6, 2006 medical excuse note, Weir, in a letter to plaintiff dated June 7, 2006, wrote:

> This information is inadequate and LIHP asks that you obtain a medical certification from your physician – which states your name, the category of the serious health condition you are currently suffering from, the medical support for the certification, the date of your condition's onset and its probable duration, what additional treatments will be required, and a statement as to how the condition renders you unable to perform the requirements of your job.
>
> Please have your doctor certify all of the above information and send it to us so that we have it in our possession no later than Friday, June 23rd, 2006. LIHP will not be able to assess your situation without such certification. If you do not provide the requested medical certification, you will be deemed to have abandoned your job and voluntarily terminated your employment

with LIHP.

(Compl. ¶ 55, 56.) Because plaintiff was being examined and tested by her physician until July 17, 2006, however, she could not provide the requested medical certification by June 23, 2006. (Compl. ¶ 57.)

In a letter dated June 23, 2006, plaintiff informed LIHP that she was still under medical care and would contact them when she was no longer in medical care. (Compl. ¶ 58.) In a letter dated June 27, 2006, Weir wrote, "[w]e regret to inform you that it has been deemed that you have abandoned your job and voluntarily terminated your employment with LIHP. This termination is effective immediately." (Compl. ¶ 59.) Plaintiff alleges that following this retaliatory action of wrongful termination, Weir continued to harass plaintiff and defamed her character by contacting her primary care physician and asking her to verify the medical note. (Compl. ¶ 60.)

Plaintiff received medical release to return to work effective November 7, 2006. (Compl. ¶ 61.) She applied for New York State unemployment insurance, but it was denied because of defendants' allegedly false statements of misconduct and job abandonment. (Compl. ¶¶ 61, 62.) However, an Administrative Law Judge of the New York State Unemployment Insurance Appeal Board awarded plaintiff unemployment insurance after determining that plaintiff was discharged, did not quit her job, and had a valid medical reason for her absence. (Compl. ¶ 63.)

B. Procedural History

On April 9, 2008, plaintiff filed the instant action. On May 22, 2008, defendants moved

to dismiss as to all claims.  Plaintiff moved to strike defendants' motion to dismiss as time-barred and improper on September 5, 2008, which Judge Joanna Seybert denied on September 12, 2008 and treated as a supplement to plaintiff's opposition to the pending motion to dismiss.  On February 23, 2009, Judge Seybert recused herself, and the case was reassigned to the undersigned.

## II. STANDARD OF REVIEW[2]

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  *See ATSI Commc'ns., Inc. v.*

---

[2]  Although defendants, in addition to moving under Rule 12(b)(6), makes the motion under Rule 12(b)(1) for lack of subject matter jurisdiction on the Title VII claim because it is time-barred, it is well settled that the timing requisites of Title VII claims are not jurisdictional and, thus, subject to, among other things, equitable tolling.  *See Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir. 1998) ("'[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'") (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)); *see also Harris v. Giant Eagle Inc.,* 133 Fed. Appx. 288, 292, 2005 WL 1313147, at *3 n.1 (6th Cir. May 27, 2005) ("The ninety-day requirement of § 2000e-5(f)(1) is not jurisdictional.") (citing *Seay v. TVA,* 339 F.3d 454, 469 (6th Cir. 2003)); *Dashan, M.D. v. Oklahoma*, No. 08 Civ. 370 (TCK) (FHM), 2008 WL 4899240, at *4 (N.D. Okla. Nov. 12, 2008) ("Because timeliness of an EEOC charge is not a jurisdictional requirement, this aspect of the Motion to Dismiss is pursuant to Rule 12(b)(6).") Thus, the Court analyzes defendants' motion with respect to the Title VII claim, as well as the other claims, under the Rule 12(b)(6) standard.

*Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant*, "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally . . . . This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings . . . . This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated.  Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."  537 F.3d 185, 191 (2d Cir. 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (holding that when plaintiff is appearing *pro se,* the Court shall "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'") (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (alterations in original)); *accord Sharpe v. Conole*, 386 F.3d 483, 484 (2d Cir. 2004).

In connection with a motion to dismiss under Rule 12(b)(6), the Court generally may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis*, 421 F.3d at 100; *accord Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). The Court may only consider a document not appended to the complaint if the document is "incorporated in [the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and . . . is *integral to the complaint*." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphases in original)). The Court may also take judicial notice of public documents not for the truth of the matter, but to establish the existence of a related filing. *See, e.g., Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9 (E.D.N.Y. May 13, 2005) (court could consider "public documents of which the plaintiff has notice" on a Rule 12(b)(6) motion to dismiss); *see also Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006) (noting that a court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment.") (internal quotation and citation omitted); *Dutton v. Swissport USA, Inc.*, No. 04 Civ. 3417 (RJD) (LB), 2005 WL 1593969, at *1 (E.D.N.Y. July 1, 2005) (taking judicial notice of transcript from a Worker's Compensation Board hearing).

### III. DISCUSSION

### A. Title VII

Defendants argue that plaintiff's Title VII claim must be dismissed because plaintiff failed to timely file the instant action after she obtained a right-to-sue letter. The Court agrees.[3]

It is well-settled that before a plaintiff is entitled to institute a lawsuit under Title VII, the plaintiff must (1) file a timely charge of employment discrimination with the EEOC, and (2) receive and act upon the statutory right to sue notice from the EEOC. *See* 42 U.S.C. §§ 2000e-5(b), (e) and (f); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (holding that, under Title VII, a claimant may bring suit in federal court "only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter") (citations omitted); *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 410 (7th Cir. 1989) ("This is not to say that a state could not impose an exhaustion requirement for claims based entirely on state law but here, of course, the foundation was Title VII"), *aff'd*, 494 U.S. 820 (1990).

Here, plaintiff filed a charge of

---

[3] As a threshold matter, the Court grants defendants' motion to dismiss the Title VII claims against the individual defendants. Specifically, it is well-established that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995); *see also Copeland v. Rosen*, 38 F. Supp. 2d 298, 302 (S.D.N.Y. 1999) ("[I]ndividual employees may not be held personally liable under Title VII, even if they are supervisory personnel with the power to hire and fire other employees."). In this case, the plaintiff asserts Title VII claims against the individual defendants with supervisory control within LIHP. As such, the defendants' motion to dismiss the Title VII claims against the individual defendants is granted.

discrimination with respect to the allegations in the complaint on or about November 20, 2006 and received a right to sue letter on or about September 19, 2007. (*See* Defendants' Motion to Dismiss, Exs. B, C).[4] However, she did not file this action until April 9, 2008, over six months later. Consequently, the Title VII claims are untimely because plaintiff did not file her suit within ninety days of her receipt of the right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1); *see also Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994) ("A Title VII claimant may file suit in federal court only if she has filed a timely complaint with EEOC and obtained a right-to-sue letter. Such suit must be commenced not more than 90 days after receipt of the right-to-sue letter.") (internal citations omitted); *Ford v. Consol. Edison Co. of N.Y., Inc.*, No. 03 Civ. 9587 (PAC), 2006 WL 538116, at *6-*7 (S.D.N.Y. Mar. 3, 2006) (dismissing Title VII claim as time barred where lawsuit was filed 92 days after plaintiff's attorney received right-to-sue letter); *Manley v. N.Y. City Police Dep't*, No. 05 Civ. 679 (FB), 2005 WL 2664220, at *5 (E.D.N.Y. Oct. 19, 2005) (dismissing Title VII claim as time barred where lawsuit was filed 91 days after receipt of right-to-sue letter).

In an attempt to counter defendants' argument, plaintiff points to a second EEOC complaint, after which she filed the instant action in less than ninety days. The exhibits show that plaintiff filed another charge of discrimination on or about December 28, 2007, and the EEOC issued a dismissal with a right to sue letter on January 15, 2008.[5] (*See* Compl., at 21; Defendants' Motion to Dismiss, Ex. D.)[6] However, after careful examination of the two charges of discrimination, the Court determines that they cover the same alleged acts of discrimination and retaliation. Specifically, both allege against LIHP retaliatory termination and discrimination on the basis of race. Both allege that she received unmerited performance reviews on April 11, 2006 and April 17, 2006, and that LIHP failed to compensate plaintiff for overtime on February 12, 2005 and February 13, 2005. Both charges further allege harassment during her medical leave in June 2006, the defamatory nature of the letter sent to her primary care physician on June 29, 2006, LIHP's denial of public commendations, raises, and year-end bonuses that were awarded to her Caucasian coworkers, and the retaliation she experienced for filing an internal complaint. (*See* Defendants' Motion to Dismiss, Exs. B, C, D.) Because plaintiff's charges allege the same "underlying discriminatory and

---

[4] The Court may consider the EEOC charges because they are public documents filed in state administrative proceedings, as well as because they are integral to her Title VII claim. *See, e.g., McCarty v. Dana Holding Corp.*, No. 08 Civ. 690, 2008 WL 4865038, at *3 (E.D. Mo. Nov. 7, 2008) (under Rule 12(b)(6) standard, "it is clear that the Court may properly incorporate the EEOC charge into its analysis"); *Williams v. Thompson*, No. Civ. A. AW-03-2084, 2004 WL 3178072, at *4 n.2 (D. Md. June 10, 2004) ("Courts have recognized that EEOC charges and right-to-sue letters are public documents that may be considered in a motion to dismiss without converting the action to a motion for summary judgment.") (citations omitted).

---

[5] It is unclear if plaintiff filed a third complaint, dated November 27, 2007, with the EEOC. (*See* Defendants' Motion to Dismiss, Ex. D, at 19.) In any event, this charge, which appears to allege the same acts of discrimination as the other two charges, would not affect the untimeliness of plaintiff's filing of this action or any of the analysis that follows, as discussed *infra*.

[6] Where exhibits are not separately designated as such, the Court will reference them as a numbered page within the main document.

retaliatory acts," the "Title VII claims which mirror the [first charge's] claims are untimely and dismissed." *Jeter v. N.Y. City Dep't of Educ.*, 549 F. Supp. 2d 295, 307 (E.D.N.Y. 2008).

Tellingly, plaintiff does not even acknowledge the initial complaint and simply states that her claims are timely because she received a right-to-sue letter from the EEOC on or about January 15, 2008. (Plaintiff's Declaration in Opposition to Defendants' Motion to Dismiss ¶ 7.) However, because her two charges of discrimination pertain to the same alleged acts, plaintiff's time to file a claim in district court began to run once she received her first right to sue letter on September 19, 2007. *See, e.g., Dahbany-Miraglia v. Queensboro Comm. College*, No. 03 Civ. 8052 (SAS), 2004 WL 1192078, at *3 (S.D.N.Y. May 27, 2004) ("Generally, the time to bring a Title VII claim begins to run from the date that plaintiff receives her *first* right-to-sue letter.") (emphasis added). Indeed, the Second Circuit has stated that "[w]e hold that whether the present action is time barred must be determined with reference to only the first Notice of Right to Sue. Otherwise, the time limitations of 42 U.S.C. 2000e-5(f)(1) would be meaningless, because potential Title VII plaintiffs could evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased." *Soso Lian Lo. v. Pan Am. World Airways, Inc*., 787 F.2d 827, 828 (2d Cir. 1986) (per curiam). Here, if the Court were to accept plaintiff's argument, it would in effect allow plaintiff to circumvent the 90-day rule. Accordingly, the Court concludes that plaintiff's Title VII claims are untimely.

However, as noted *supra*, the 90-day rule is treated as a "limitations periods subject to equitable tolling." *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984). Thus, the 90-day rule may be equitably tolled in "rare and exceptional circumstance[s]," *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks omitted), in which a party is "prevented in some extraordinary way from exercising [her] rights," *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir.1996) (internal quotation marks and alteration omitted); s*ee also Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003); *Smith v. Chase Manhattan Bank*, No. 97 Civ. 4507 (LMM), 1998 WL 642930, at *4 (S.D.N.Y. Sept. 18, 1998).

"When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period [he] seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" *Zerilli-Edelglass*, 333 F.3d at 80-81 (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)); *see also South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (noting that the principles of equitable tolling do not extend to what "is at best a garden variety claim of excusable neglect") (citation and quotation marks omitted). The doctrine is "highly case-specific," and the "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 184-85 (2d Cir. 2000); *see also Smith*, 1998 WL 642930, at *3 ("[A] court must consider the equities of the excuse offered to explain the delay and may extend the limitations period if warranted.").

In this case, the Court finds that plaintiff has not shown – or even attempted to show – that there is any basis for equitable tolling (or waiver or estoppel) in connection with her failing to comply with the requisite time frame. This case does not fall within one of the paradigmatic situations found to constitute an "extraordinary" circumstance, such as where an individual reasonably relies on erroneous information given to him by an administrative agency regarding a Title VII time limit. *See, e.g., Carlyle Towers Condo., Ass'n, Inc. v. FDIC*, 170 F.3d 301, 310 (2d Cir. 1999); *Johnson*, 731 F.3d at 146-47. Indeed, this is not a situation where the Court is engaging in a rigid and unforgiving application of the 90-day rule that might defeat "the 'remedial purpose of the [civil rights] legislation as a whole'" because the allegedly aggrieved plaintiff would be "absolutely barred from pursuing judicial remedies by reason of [his] excusable failure to meet the time requirement." *Johnson*, 731 F.2d at 146 (quoting *Zipes*, 455 U.S. at 398); *see also Connell v. J.P. Morgan Inv. Mgmt., Inc.*, No. 93 Civ. 5940 (JSM), 1994 WL 132148, at *3 (S.D.N.Y. Apr. 12, 1994) (noting that "a technical reading of the filing provisions of Title VII is 'particularly inappropriate in a statutory scheme in which laymen, unassisted by lawyers, initiate the process'") (quoting *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972)). Here, without any justification, plaintiff did not file her action in federal court until over six months following the EEOC dismissal and, therefore, well past the ninety-day period. Thus, the circumstances of the instant case are analogous to those that other courts have similarly found did not warrant the application of the doctrine of equitable tolling. *See, e.g., Molnar v. Legal Sea Foods, Inc.*, No. 06 Civ. 476 (SCR), 2007 U.S. Dist. LEXIS 17643, at *8 (S.D.N.Y. Jan. 18, 2007); *Smith v.*

*Henderson*, 137 F. Supp. 2d 313, 319 (S.D.N.Y. 2001). Because there is no basis for equitable tolling under the circumstances of this case, the Court concludes that plaintiff's claims are time-barred for failure to file her complaint within ninety days of the EEOC's dismissal letter with notice of right to sue.

Finally, to the extent plaintiff theoretically could try to argue that her second EEOC complaint contained some new allegations not contained in her first complaint (by, for example, focusing more on national origin rather than race), the Court concludes that, even assuming *arguendo* that some new claim were contained in the second EEOC charge, such claim is also untimely and warrants dismissal for a separate and independent reason. As noted *supra*, in order to bring a Title VII discrimination claim in a federal district court, a plaintiff must first exhaust her administrative remedies by "filing a timely charge with the EEOC or with 'a State or local agency with authority to grant or seek relief from such practice.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82-83 (2d Cir. 2001) (quoting 42 U.S.C. § 2000e-5(e)). Filing a timely charge requires a plaintiff to institute proceedings with a state or local agency or the EEOC within 300 days of the alleged acts of discrimination. 42 U.S.C. § 2000e-5(e). This requirement is strictly enforced. *See Nat'l R.R. Passenger Corp. (AMTRAK) v. Morgan*, 536 U.S. 101, 108 (2002) ("In the context of a request to alter the timely filing requirements of Title VII, this Court has stated that 'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'") (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)). These statutory filing periods are "analogous to [] statute[s] of

limitations," *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996), and, as such, "a failure to timely file a charge acts as a bar to a plaintiff's action." *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, No. 00-CV-6307 (KMK), 2007 U.S. Dist. LEXIS 6534, at *20 (S.D.N.Y. Jan. 29, 2007) (citing *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004)); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006). Furthermore, this "statute of limitations" begins to run for each discrete discriminatory or retaliatory act when each act occurs. *See Morgan*, 536 U.S. at 114; *Hill*, 312 F. Supp. 2d at 472.

Therefore, even assuming *arguendo* that there were new claims only covered by plaintiff's second charge of discrimination, the Court finds that any Title VII claims based on these allegations are untimely, because none of the alleged discriminatory acts took place within 300 days of plaintiff's filing of the second charge with the New York State Division of Human Rights. Under the applicable law, claims for relief under Title VII that took place 300 days or more prior to December 27, 2007 – the date that plaintiff filed a second charge of discrimination – would be time-barred. Consequently, only discrete acts of discrimination or retaliation occurring *after* March 2, 2007 are timely. However, there are no acts that fall within that time period because plaintiff was terminated from employment at LIHP on June 27, 2006, and plaintiff has not alleged that any acts occurred subsequent to her termination except for the letter signed by Weir on June 29, 2006, and her second EEOC charge was filed well beyond 300 days after that date. Moreover, plaintiff has again provided no basis for equitable tolling. Therefore, plaintiff's Title VII claims must be dismissed as time-barred on these grounds as well.

Plaintiff does not dispute her failure to meet the filing requirements of Title VII in a timely manner, or attempt to explain her reason for failing to do so. Instead, plaintiff argues, at great length, that her complaint satisfies the pleading requirements of Fed. R. Civ. P. 8 (Plaintiff's Declaration In Opposition to Defendants' Motion to Dismiss ¶¶ 9-11), which is not at issue in this motion. Plaintiff's references to several cases in other Circuits, for the proposition that plaintiff need not set forth the elements of a *prima facie* case of discrimination to withstand a motion to dismiss (Plaintiff's Declaration In Opposition to Defendants' Motion to Dismiss ¶ 10-11), are also inapposite. Defendants do not argue that plaintiff has failed to sufficiently plead the elements of her claims under Title VII. The issue of whether plaintiff's Title VII claims are time-barred does not turn on whether plaintiff has sufficiently pled employment discrimination under Fed. R. Civ. P. 8. In sum, for the reasons discussed above, plaintiff's Title VII claims must be dismissed as time-barred.

## B. Section 1985

Defendants argue for dismissal of plaintiffs' conspiracy claims under 42 U.S.C. § 1985 on the basis of the intracorporate conspiracy doctrine. For the reasons set forth below, the Court agrees. The Court further agrees with defendants that because a valid Section 1985 claim is a predicate to a claim under Section 1986, claims arising under both statutes must be dismissed.

The intracorporate conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other. *See, e.g.,*

10

*Farbstein v. Hicksville Pub. Library*, No. 06 Civ. 0907, 2007 U.S. App. LEXIS 26491, at *3-*4 (2d Cir. Nov. 15, 2007) (affirming dismissal of conspiracy complaint "at the first step of analysis" because complaint made reference only to employees of same corporation) (citing *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978)); *Herrmann*, 576 F.2d at 459 ("[T]here is no conspiracy [under Section 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers[] and employees, each acting within the scope of his employment."); *Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003); *Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 359-60 (E.D.N.Y. 1999); *Rini v. Zwirn*, 886 F. Supp. 270, 292 (E.D.N.Y. 1995) ("Intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees.").

Here, based upon the complaint, it is clear that plaintiff alleges that the individual defendants are all employees of a single entity, defendant LIPH. Plaintiff also does not allege that the individual defendants were acting outside of the scope of their employment. In order to show that defendants acted outside the scope of their employment, a plaintiff must show that defendants were "acting in their personal interests, wholly and separately from the corporation" or municipal entity. *Bhatia v. Yale Univ.*, No. 06 Civ. 1769, 2007 U.S. Dist. LEXIS 73849, at *4-*5 (D. Conn. Sept. 30, 2007) (citing *Tardd v. Brookhaven Nat'l Lab*, 407 F. Supp. 2d 404, 414 (E.D.N.Y. 2006)); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 442 (S.D.N.Y. 2007) (dismissing conspiracy claims under Sections 1983 and 1985 under intracorporate conspiracy doctrine where plaintiff "does not provide any evidence to

suggest that [defendants] were motivated by an independent personal stake in his arrest and prosecution"). The Court has carefully reviewed the complaint and finds that plaintiff has failed to allege that defendants were acting solely in their personal interests, separate and apart from their duties as employees at LIHP and supervisors of plaintiff. Thus, the Court dismisses the claims of conspiracy under Section 1985 based upon the intracorporate conspiracy doctrine.

Defendants also move to dismiss plaintiff's claim under Section 1986 on the grounds that plaintiff's claims fail under Section 1985. "Section 1986 provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Thomas v. Roach*, 165 F.3d 137, 147 (2d 1999) (citation and quotation marks omitted). However, Section 1985 liability is a necessary predicate to a Section 1986 claim. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000); *see also Posr v. Court Officer Shield # 207*, 180 F.3d 409, 419 (2d Cir. 1999) (affirming dismissal of Section 1986 claim where district court also dismissed Section 1985 claim). Here, because the Court dismisses plaintiff's conspiracy claims under Section 1985 for the reasons discussed *supra*, the Court must also dismiss plaintiff's claims under Section 1986. *See, e.g., O'Bradovich v. McGuire*, 325 F. Supp. 2d 413, 426-27 (S.D.N.Y. 2004) ("Plaintiffs' inability to state a claim for conspiracy under § 1985 is, in turn, fatal to their § 1986 claim").

## C. Defamation

Defendants further argue that plaintiff's claim of defamation is barred by the

applicable state of limitations under New York law. The Court agrees.

Plaintiff alleges that the letter signed by Weir on June 29, 2006 was false and defamatory. (Compl. ¶¶ 83-90.) Under New York law, the statute of limitations for defamation actions is one year, and the cause of action accrues on the date of the alleged false statement. *See* N.Y. C.P.L.R. § 215(3); *see also Shamley v. ITT Corp.*, 869 F.2d 167, 172 (2d Cir. 1989). Since the letter at issue was published on June 29, 2006, plaintiff's claim for defamation would have been timely until June 29, 2007. Here, the instant action was commenced on April 9, 2008, more than one year after the issuance of the allegedly defamatory letter. Accordingly, the Court dismisses plaintiff's defamation claim as time-barred under New York law.

### D. Breach of Contract

Plaintiff's third cause of action alleges breach of contract, based on the written employment policies that were published in the employment handbook and personnel conduct manual, and the procedures defendants set for employee grievances, which plaintiff allegedly relied on as a term and condition of her employment. (Compl. ¶¶ 75-82.) Defendants argue that these allegations cannot form the basis of a breach of contract claim as a matter of law. The Court agrees.

As a general matter under New York law, a failure by an employer to follow its internal policies cannot form the basis of a breach of contract claim, unless, *inter alia*, mutual assent to enter into an implied-in-fact contract is shown. *See Maas v. Cornell Univ.*, 94 N.Y.2d 87 (N.Y. 1999). Reviewing the complaint in its entirety and taking plaintiff's

allegations as true (and construing those allegations most favorably to plaintiff), the Court determines that plaintiff has not alleged any facts that could plausibly support an assent by LIHP to deem its internal policies as an implied-in-fact contract. In fact, the relevant documents demonstrate the contrary.[7] The New York Court of Appeals addressed this issue in *Maas*:

> Maas has failed to plead a cognizable breach of contract action. The University nowhere reflected an intent that the provisions of its Code would become terms of a discrete, implied-in-fact agreement, for purposes such as are alleged in this lawsuit. The Code itself is heavily informational in nature and does not express or support the implication of any promise on the part of the University. While the Code and its attendant regulations promulgate the University's sexual harassment policy and provide procedures for dealing with sexual harassment claims, Maas' essential employment duties and rights are only

---

[7] Because the employee handbook is incorporated by reference in the plaintiff's complaint and is integral to plaintiff's complaint with respect to this cause of action, the Court may consider the document on a Rule 12(b)(6) motion. *See, e.g., Wait v. Becks's N. Am., Inc.*, 241 F. Supp. 2d 172, 184 n.12 (N.D.N.Y. 2003) ("The [Employee] Handbook may be considered in connection with the instant motion to dismiss because it is referenced in the Complaint and integral to plaintiff's sixth, seventh, and eighth causes of action.").

indirectly affected by these provisions. Finally, in this regard, Cornell's handbook clearly states that it can be altered at any time (impliedly unilaterally), and cautions readers and affected persons to seek out the most updated edition. That feature is hardly the harbinger of a legally binding set of arrangements. We conclude, therefore, that there is no support in this record or in relevant authority sources to sustain Maas' implied contract cause.

94 N.Y.2d 94. Here, the employee handbook is "heavily informational in nature." (Defendants' Motion to Dismiss, Ex. F.) It also clearly states, in its "Personnel Handbook Disclaimer" at the front of the handbook, that it is for informational purposes only and "[n]othing in this Handbook in any way affects the right of the company to discipline or discharge its employees for any reason whatsoever." (Defendants' Motion to Dismiss, Ex. F.) Plaintiff furthermore signed a receipt form acknowledging that the "policies and benefits contained in this Employee Handbook may be changed, modified, or deleted at any time" and that "neither this manual nor any communication by a management representative is intended to, in any way, create a contract of employment, and that either [plaintiff] or the company may terminate [her] employment at any time, with or without cause." (Defendants' Motion to Dismiss, Ex. F.) Thus, under *Maas*, plaintiff's claim for breach of contract cannot proceed. *Accord Wait*, 241 F. Supp. 2d at 185 ("Moreover, contrary to plaintiff's argument, the Handbook did not merely retain BNA's right to discharge

plaintiff at-will, but expressly precluded reliance upon the Handbook as the foundation of *any* right or contract . . . Accordingly, no contractual relationship, express or implied, was formed.") (emphasis added).

The case authority is even clearer in the specific context of a wrongful termination claim. In this context, New York recognizes an action against an employer based on its written policies if the employer "made the employee aware of its express written policy limiting its right of discharge and . . . the employee detrimentally relied on that policy in accepting the employment." *De Petris v. Union Settlement Assn.*, 86 N.Y.2d 406, 410 (N.Y. 1995); *see also Lobosco v. N.Y. Tel. Company/NYNEX*, 96 N.Y.2d 312, 316 (N.Y. 2001). However, "[t]he New York Court of Appeals has admonished that this is a difficult pleading burden, and that routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements." *Baron v. Port Auth.*, 271 F.3d 81, 85 (2d Cir. N.Y. 2001) (internal citations and quotations omitted).

Plaintiff clearly fails to satisfy the "difficult pleading burden" required under New York law. *Id.* Courts applying New York law in similar situations have consistently held that "the explicit disclaimer of a contractual relationship contained on the facing page clearly preserves [the employer's] right to maintain an at-will employment relationship with plaintiff." *Lobosco*, 96 N.Y.2d at 316. Here, it is clear from the allegations of the complaint that plaintiff was an at-will employee. *See Baron,*, 271 F.3d at 85 ("In New York, it has long been settled that an employment relationship is presumed to be a hiring at will, terminable at any time by either party. This presumption can be

rebutted, however, by establishing an express limitation in the individual contract of employment curtailing an employer's right to terminate at will.") (internal citations and quotations omitted); *De Petris*, 86 N.Y.2d at 410 ("Absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party. This State neither recognizes a tort of wrongful discharge nor requires good faith in an at-will employment relationship.") (internal citations omitted). Since the documents at issue expressly do not limit LIHP's actions as an employer regarding any of the contents in the employee handbook, plaintiff cannot assert a claim for breach of contract with respect thereto. *See Baron*, 271 F.3d at 85-86 ("Here, the plaintiffs' implied contract claims fail because none of the writings identified by the parties . . . constitutes a written express limitation on the Port Authority's right to hire, fire, promote, demote, transfer or take any other employment action it deems otherwise appropriate. To the contrary, the disclaimers at the front of both the Port Authority Guidebook and the PAIs expressly and specifically disavow any intent on the Port Authority's part to accept contractual limitations on its rights as an at-will employer . . . These disclaimers plainly convey the Port Authority's intention that the provisions in the Guidebook and PAIs are non-binding. No understanding by the plaintiffs to the contrary would have been objectively reasonable."); *see also Mirabella v. Turner Broadcasting Sys., Inc.*, No. 01 Civ. 5563 (BSJ), 2003 WL 21146657, at *2 (S.D.N.Y. May 19, 2003) ("The New York Court of Appeals has held that an express disclaimer of contractual rights in an employee manual bars an action for breach of contract based on the terms of the manual.") (citing *Lobosco*, 96 N.Y.2d at 317); *Junk v. Aon Corp.*, No. 07 Civ. 4640 (LMM)

(GWG), 2007 WL 4292034, at *5 (S.D.N.Y. Dec. 3, 2007) ("Plaintiff's reliance upon the whistleblower provision cannot be considered objectively reasonable, particularly because of the disclaimer within the same document that clearly expresses Defendants' intention that it not be taken as a binding, contractual agreement. In light of the foregoing, Defendants' motion to dismiss Plaintiff's breach of contract claim, based upon the whistleblower provision in Aon's 'Code of Business Conduct,' is hereby granted.").

Accordingly, even assuming the facts alleged by plaintiff to be true for the purposes of this motion, her claims for breach of contract, based on LIHP's internal policies as set forth in the employee handbook, including grievance procedures, must be dismissed for failure to state a claim upon which relief may be granted. *Accord U.S. ex rel. Smith v. New York Presbyterian Hosp.*, No. 06 Civ. 4056 (NRB), 2007 WL 2142312, at *16 (S.D.N.Y. July 18, 2007); *Junk*, 2007 WL 4292034, at *5.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the first, third, fourth, and sixth causes of action in the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), is granted. The parties may proceed with discovery on the remaining two causes of action under the direction of Magistrate Judge William D. Wall.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 13, 2009
Central Islip, New York


* * *

Plaintiff appears *pro se.*  The attorney for the defendants is Peter L. Contini, L'abate, Balkan, Colavita & Contini, L.L.P, 1050 Franklin Avenue, Fourth Floor, Garden City, NY 11530.